Alan Reeves ALEMAN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 09–00–223 CR to 09–00–226 CR.

Court of Appeals of Texas,
Beaumont.

Submitted May 10, 2001.

Delivered May 23, 2001.

Liz Mobley, Mobley Law Firm, Conroe, for appellant.

Michael A. McDougal, District Attorney, Peter C. Speers, III, Assistant District Attorney, Conroe, for state.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Chief Justice.

Alan Reeves Aleman appeals from four convictions for the class A misdemeanor offense of display of harmful material to a minor. After finding him guilty on the four informations in a consolidated trial, the jury assessed punishment in each case at one year of confinement and a $4,000 fine. Aleman raises three points of error.

The four victims, 14–year–old A.M.B. (No. 09–99–223 CR), 8–year old C.P. (No. 09–00–224 CR), 12–year–old N.R.P. (No. 09–00–225 CR), and 13–year–old R.J.G. (No. 09–00–226 CR), knocked on Aleman's door looking for yard work. Aleman invited the boys inside to watch television, offered them beer and cigarettes, and showed them a videotape of a nude man and a nude woman having sex.

■ Point of error one, "Failure to admit tape = error," contends the State failed to introduce the allegedly harmful material into evidence, thereby failing to prove an essential element of the offense, that the material was harmful, beyond a reasonable doubt. The State's failure to produce a particular tape was explained in the punishment phase by Detective Joe Alvarado who testified that he recovered 1896 videotapes when he executed a search warrant for Aleman's house the day following the offense. Detective Alvarado testified the 300–400 tapes he personally observed depicted hard core pornography.

Aleman relies upon cases holding that evidence of community standards is unnecessary in an obscenity prosecution when the obscene material is produced in court for the jury's perusal. *T.K.'s Video, Inc. v. State*, 859 S.W.2d 85, 87 (Tex.App.—Fort Worth 1993, pet. ref'd); *Ho v. State*, 856 S.W.2d 495, 500 (Tex.App.—Houston [1st Dist.] 1993, no pet.); *Smith v. State*, 811 S.W.2d 665, 671 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). These cases do not stand for the proposition argued by Aleman, that the actual material must be produced in court in order for the State to prove that the material is patently offensive to community standards.

"Harmful material" means material whose dominant theme taken as a whole: 1) appeals to the prurient interest of a minor, in sex, nudity, or excretion; 2) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and 3) is utterly without redeeming social value for minors. TEX. PEN.CODE ANN. § 43.24 (Vernon 1994). The State did not produce a videotape at trial, but the children described what they observed. N.R.P. testified the movie depicted a man and a woman having sex, that they had no clothing on, that they were grunting and squealing, and that he could see the penis and vagina. N.R.P. referred to the videotape as a "triple X movie," and stated, "I just know the meaning for a movie like that." R.J.G. testified he saw a male and a female having sexual intercourse. C.P. testified the man and the woman were doing more than kissing, and that he saw the private parts on the man and on the woman. After showing the movie to the children for about one minute, Aleman switched off the tape and asked the children if they had ever had sex and if they had ever seen their parents naked. The jury could determine from the testimony presented at trial that the appellant displayed a graphic depiction of sexual intercourse in which the actors' genitals were exposed. Although he admitted that he was inexperienced in such matters, one of the children was able to identify what he saw as pornography, and a search of the premises the

following day revealed that there were literally hundreds of pornographic videotapes on the premises. The jury could have determined *any* videotaped display of the vagina of a woman engaged in sexual intercourse to be patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors.

Next, Aleman argues the minors' testimony does not prove beyond a reasonable doubt that the material displayed appealed to the prurient interest of a minor in sex. Aleman displayed a scene of sexual intercourse outside of any social, artistic, or literary context. The conversation Aleman initiated with the children certainly dispelled any possibility that the content of the video appealed to one's spiritual nature, as he asked them if they had personally engaged in sexual activity or observed their parents naked.

■ Finally, Aleman argues that the evidence is insufficient because there is no evidence of what the videotape depicted as a whole. As the gravamen of the offense concerns only the material displayed to the minor, that which is not displayed is irrelevant. *Ashby v. State*, 663 S.W.2d 453, 455 (Tex.Crim.App.1984). As the jury could have found all of the elements of the offense to have been proven beyond a reasonable doubt, point of error one is overruled.

■ Point of error two states, "Testimony To Other Minor's Mental State = Improper." N.R.P. described A.M.B.'s reaction to the videotape as one of disgust. A.M.B. said "ooh," in N.R.P.'s estimation, "like nasty." A lay witness may provide his opinion or inference, provided it is rationally based on the perception of the witness and helpful to a determination of a fact in issue. TEX.R. EVID. 701. N.R.P. based his conclusion on an articulable sensory perception. Furthermore, Aleman

failed to preserve error for review by presenting a timely objection. TEX.R. EVID. 103(a)(1); TEX.R.APP. P. 33.1(a)(1). Point of error two is overruled.

■ Point of error three, "Failure to Sufficiently Link A Prior Conviction To The Defendant = Error," complains that the State failed to prove that the defendant was the same Alan Reeves Aleman named in the three judgments admitted into evidence over counsel's objection that the exhibits were "irrelevant." The State argues the objection failed to apprise the trial court that the State had failed to identify Aleman as the same person named in the judgment contained in the exhibits in question. The objection raised by defense counsel preserved for review the issue of whether the evidence was relevant to an issue in the case. TEX.R. EVID. 401, 402. We shall confine our analysis to the rules invoked.

■ The prior criminal record *of the defendant* is relevant in the punishment phase of a trial. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2001). If the criminal records were Aleman's, they were relevant. Were they Aleman's? A judgment may be connected to the accused through the testimony of a fingerprint expert, through a person who knows the defendant and can personally testify to the past convictions, through a stipulation or a judicial admission, or through a photograph that matches the accused. *Beck v. State*, 719 S.W.2d 205, 209–10 (Tex.Crim.App.1986). The State concedes it offered no evidence beyond the judgments themselves to prove that appellant was the Alan Aleman named in those judgments. State's Exhibit No. 1 is a certified copy of a judgment out of the County Court at Law No.1 of Montgomery County, Texas, placing "Alan Aleman" on community supervision. The judgment

bears a fingerprint and the signature of the defendant in that case. State's Exhibit No. 4 is a certified copy of a "Judgment Revoking Community Supervision" in the same cause as State's Exhibit No. 1, revoking the community supervision of "Alan Reeves Aleman," and bears a signature and fingerprint, as well. State's Exhibit No. 2 is a certified copy of a judgment out of the 221st District Court of Montgomery County, Texas, placing "Alan Reeves Aleman" on community supervision. The judgment bears the defendant's signature. State's Exhibit No. 3, a certified copy of a judgment placing "Alan Reeves Aleman" on community supervision, also contains a fingerprint and a signature. Thus, each exhibit proves that a person with the appellant's name was found to be guilty of driving while intoxicated in the same county where the appellant lives. No evidence connected any of the fingerprints and signatures to the appellant. The State failed to connect the accused to the criminal records offered into evidence. Therefore, the evidence was not relevant under Rule 401. As the evidence was not relevant under Rule 401, it was inadmissible under Rule 402. The trial court erred in overruling Aleman's objection.

 Because the error in admitting the evidence was not constitutional error, we use the standard of Rule 44.2(b) to determine whether the error warrants reversal. An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). The jury charge instructed the jury that it could not consider evidence of extraneous bad acts unless it found beyond a reasonable doubt that the acts were committed by the defendant. However, the prosecutor argued that the prior criminal records were Aleman's and urged the jury to consider them in assessing punishment: "And the last thing were the four documents submitted to you pertaining to his prior criminal charges showing you, ladies and gentlemen that this is not his first conviction. This is not his first criminal conviction. He's been in trouble with the law before. He has broken the law before." Although the prior convictions were not the only evidence offered in punishment, the prosecutor relied on the judgments in arguing for the maximum sentence, and the jury assessed the maximum punishment in each case. After examining the record, we lack fair assurance that the error did not influence the jury, or had only slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). Point of error three is sustained.

The convictions are affirmed. Because the error occurred during the punishment phase, we reverse the judgments and remand the causes to the trial court for a new punishment hearing. TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp. 2001).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

GAULTNEY, Justice, concurring in part and dissenting in part.

I concur with the majority's affirmance of the convictions. I respectfully dissent to the reversal of the punishment; I would affirm the judgments in their entirety.

The majority holds that the trial court erred in overruling defendant's objection that his prior convictions were "irrelevant." I would hold instead that appellant's "relevancy" objection below is a general objection which does not preserve error on appeal; furthermore, his general "relevancy" objection at trial does not comport with his appellate complaint. An objection that evidence is "irrelevant" is a

general objection. *See Henderson v. State*, 617 S.W.2d 697, 698 (Tex.Crim.App. 1981); *Miranda v. State*, 813 S.W.2d 724, 742 (Tex.App.—San Antonio 1991, pet. ref'd) ("A general objection of 'relevancy' or of 'hearsay' present[s] nothing for review."). That is particularly true in the punishment phase in view of the Texas Court of Criminal Appeals' statement that a determination of what is relevant in the punishment phase "should be a question of what is *helpful to the jury in determining the appropriate sentence* in a particular case." *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex.Crim.App.2000) (quoting *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim.App.1999)) (emphasis in *Mendiola* ). The Court's description of "relevancy" demonstrates that the objection "irrelevant" is wide-ranging and covers a barnyard of specific issues.

It is axiomatic, based upon case law and rules of evidence and appellate procedure, that an objection must be specific to preserve error. *See Martinez v. State*, 22 S.W.3d 504, 507 (Tex.Crim.App.2000); Tex.R. Evid. 103(a)(1); Tex.R.App. P. 33.1(a). A specific objection is required for two reasons; first the trial judge must be informed of the basis for the objection to afford the court an opportunity to rule on the issue; and secondly, a specific objection provides opposing counsel an opportunity to satisfy the objection by offering additional evidence or removing the basis for the objection. *See Martinez*, 22 S.W.3d at 507 (Further, an appellate court errs in reversing a judgment on a ground

that was not preserved by a specific objection.). Here, appellant did not tell the trial court that he objected to the State's failure to offer sufficient proof that the prior convictions were actually his convictions, as opposed to someone with the same name who lived in the same county. Had he made that specific objection, the State would have been given an opportunity to satisfy that objection. The trial court would also have been sufficiently informed of the basis for the objection so that the court could have excluded the evidence if the State failed to satisfy the specific objection. *See Darby v. State*, 922 S.W.2d 614, 619 (Tex.App.—Fort Worth 1996, pet. ref'd). Aleman's relevancy objection at the punishment phase to the admission of the certified judgments setting forth his prior convictions did not apprise the trial court of the specific complaint he raises on appeal—that the State did not offer sufficient proof he was the same man as the one named in the certified judgments.

Given the broad scope of what is "relevant" evidence in the punishment phase, I would hold that appellant's general "irrelevant" objection was tantamount to no objection and, moreover, did not comport with the issue raised on appeal.[1] I would affirm the judgments of the trial court.

1. In closing argument defendant's attorney argued that her client had "never been convicted of any felony offenses other than driving while intoxicated." The convictions at issue here were the DWI convictions. She also argued that he was currently on probation and that when the jury reviewed the DWI conviction they would see "that one of the conditions of his probation is that he commit

no new offenses against the laws of this [S]tate[.]" She argued that if the jury was "concerned that this might happen again," they would "know that if he did commit a new offense in this regard that would be a violation of his community supervision." If these were not her client's convictions, as an officer of the court she certainly would not have made this assurance to the jury, would

she? What if the jury had relied on her assurance?

Because I believe the error asserted here was not preserved at trial, I need not address whether this affirmative use and adoption of his DWI convictions in closing argument constituted a waiver of his relevance objection or instead a permissible attempt to explain the evidence.