PD-1184-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/9/2015 4:44:18 PM
Accepted 10/9/2015 4:55:13 PM
ABEL ACOSTA
CLERK

NO. PD-1184-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS
AT AUSTIN

ROBERT GARRETT,
Petitioner/Appellant

v.

THE STATE OF TEXAS,
Respondent/Appellee

*On Appeal in Cause No. F10-52395-R*
*from the 265th Judicial District Court*
*Of Dallas County, Texas*
*And on Petition for Discretionary Review*
*from the Fifth District of Texas at Dallas*
*In Cause No. 05-13-00883-CR*

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

*Counsel of Record:*

**Lynn Richardson**
**Chief Public Defender**

**Katherine A. Drew**
**Chief, Appellate Division**

FILED IN
COURT OF CRIMINAL APPEALS

October 9, 2015

ABEL ACOSTA, CLERK

**Kathleen A. Walsh**
**Assistant Public Defender**
State Bar Number:  20802200
133 N. Riverfront Blvd., LB 2
Dallas, Texas 75207-399
(214) 653-3550 (*telephone*)
(214) 653-3539 (*fax*)
kwalsh@dallascounty.org

# LIST OF PARTIES

**TRIAL COURT JUDGE**
Mark C. Stoltz, Presiding Judge

**APPELLANT**
Robert Garrett

**APPELLANT'S ATTORNEYS**
**AT TRIAL**
Matthew Arnold, State Bar No. 00789129
3500 Maple Avenue, Suite 400
Dallas, TX 75219

**ON APPEAL**
Kathleen A. Walsh, State Bar No. 20802200
Assistant Public Defender
Dallas County Public Defender's Office
133 N. Riverfront Blvd., LB 2
Dallas, Texas  75207-4399

**STATE'S ATTORNEYS**
**AT TRIAL**
Jason Fine, State Bar No. 24055477
Patrice Williams, State Bar No. 24047116

**ON APPEAL**
G. Brian Garrison, State Bar No. 24065276

Assistant District Attorneys
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas  75207-4399

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF THE CASE..................................................................1

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ....................1

QUESTION FOR REVIEW ...................................................................2

***Whether the court of appeals erred in determining that the prosecutor's "reprehensible" action in presenting false information to the jury as to the content of an exhibit and what it stated as to Appellant's criminal history did not affect the jury's assessment of punishment.***

ARGUMENT ...............................................................................2

    Pertinent facts. ...................................................................3

        A. The testimony ...............................................................3

        B. State's Exhibit 2..............................................................6

        A. The prosecutor's closing argument .....................................8

    The court of appeals' conclusion that the jury would not have assessed a different sentence had State's Exhibit 2 been excluded is premised on false assumptions ................................................................9

    Conclusion ........................................................................11

PRAYER FOR RELIEF .....................................................................12

CERTIFICATE OF SERVICE ...............................................................13

CERTIFICATE OF COMPLIANCE..........................................................13

APPENDIX

# INDEX OF AUTHORITIES

**Cases**

*Garrett v. State,*
 No. 05-13-00833-CR, 2015 Tex. App. LEXIS 8439 (Tex. App.—Dallas
 August 12, 2015) (not designated for publication) ......................................*passim*

**Rules**

Tex. R. App. P. 66.3 (f) .................................................................................12

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**COMES NOW** Robert Garrett, Petitioner herein and Appellant before the court of appeals, and respectfully submits this Petition for Discretionary Review.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that the facts of the case and the issues raised are such that oral argument will not significantly aid this Court's consideration and disposition of this Petition.

## STATEMENT OF THE CASE

A jury convicted Appellant of the offense of indecency with a child and assessed punishment at 9 years' imprisonment and a $4,000 fine. (RR4: 100, 140-41; CR: 110, 117).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

On August 12, 2015, in a memorandum opinion, the Court of Appeals for the Fifth District of Texas affirmed Appellant's conviction. *Garrett v. State*, No. 05-13-00833-CR, 2015 Tex. App. LEXIS 8439 (Tex. App.—Dallas August 12, 2015) (not designated for publication). (*See Appendix*). No motion for rehearing was filed. This Petition is timely if filed on or before October 12, 2015.[1]

---

[1] Appellant's motion for extension of time in which to file the Petition for Discretionary Review was granted by this Court on September 14, 2015.

## QUESTION FOR REVIEW

***Whether the court of appeals erred in determining that the prosecutor's "reprehensible" action in presenting false information to the jury as to the content of an exhibit and what it stated as to Appellant's criminal history did not affect the jury's assessment of punishment.***

## ARGUMENT

In his appeal, Appellant raised five points of error pertaining to the admission of State's Exhibit 2 and the prosecutor's representations to the jury as to the content of the exhibit and what it stated as to Appellant's criminal history. As stated in the court of appeals' opinion, in his first issue, Appellant argued the prosecutor's misrepresentation of the content of the exhibit violated his right to due process and due course of law. In his second and third issues, Appellant asserted that his trial counsel's representation was inadequate as counsel failed to object to the prosecutor's misrepresentation of the content of the exhibit, examine the exhibit when offered as evidence, and investigate Appellant's criminal history. In his fourth and fifth issues, Appellant argued that the exhibit should have been excluded because it was not authenticated or linked to him. *Garrett*, 2015 Tex. App. LEXIS 8439 at *6-7. The court of appeals disposed of all of these issues by conducting a harm analysis and concluding that given the nature of the evidence before the jury, including the evidence support the verdict, and the punishment

assessed, the jury would not have assessed a different sentence had State's Exhibit 2 been excluded. *Id*. at *11-12.

***Pertinent facts.***

### A. *The testimony.*

During the punishment hearing, the defense presented testimony from Appellant's daughter, Prentice Garrett, who testified Appellant's sexual contact with H.A. was behavior that was totally inconsistent with what she knew about her father and that she had a hard time believing that he did something like this. (RR4: 122-23). She also testified that Appellant never did anything like this to anyone else and has always been protective with her, her sister, nieces and grandchildren. (RR4: 122-24). During the State's cross-examination of Ms. Garrett, the following occurred:

BY MR. FINE:

Q. Ms. Garrett, what's your mom's name?

A. Sharyl, Sharyl Williams.

Q. Sharyl Williams?

A. Yes, sir.

Q. Were -- was your dad and your -- yeah, were your dad and mom living together back in 1998? You would have been I guess seven years old?

A. Yes.

Q. Back in Georgia?

3

A. Yes.

Q. Do you remember ***when he was convicted of simple battery*** of your mom?

A. I'm not going to say that I would remember anything like that. My parents back when I was little, they would keep a lot of things from me. But I've never heard that what you just told me.

Q. You guys lived back in '98 in DeKalb County, Georgia, right?

A. Huh?

Q. You guys would have lived in DeKalb –

A. Yes, DeKalb.

Q. What city is that?

A. Stone Mountain-Lithonia area is metro Atlanta, right outside.

MR. FINE: Your Honor, may I approach?

THE COURT: You may.

Q. (By Mr. Fine) Ms. Garrett, I'm going to have you look at what I've marked as State's Exhibit 2. I don't want you to read it out loud, I just want you to kind of look at that. Does that appear to be your dad's signature?

A. I wouldn't be able to identify but.

Q. Is that his name, Robert Garrett?

A. It says Robert Garrett.

Q. And Sharyl Williams, is that how your mother spells her name, S-H-A R-Y-L.

A. Yes, sir.

4

Q. Okay. And back in March -- well, March 12th, 1999, you guys would have been living in Georgia, your mom and dad were together then?

A. Yes.

Q. Is that your dad's date of birth, 10-20-67?

A. Yes, sir.

Q. Does this appear to be *a conviction for your dad against your mom* from what you could tell based on that information?

A. I'm guessing so.

MR. FINE: State offers State's 2 at this time, Your Honor.

MR. ARNOLD: Your Honor, I'm going to object it's not been authenticated.

THE COURT: Let me see it. Overrule the objection. It's admitted.

MR. FINE: Permission to publish, Your Honor?

THE COURT: You may.

MR. FINE: *This is a conviction, case 98-CR 5451-5 out of DeKalb County, Georgia Superior Court for simple battery. It states: On the 26th day of May 1998, the defendant, Robert Garrett, did intentionally make physical contact with an assaultive provoking nature of the person Sharyl Williams. There's also a probation revocation order filed on May 14th, 2002 in the same cause number.*

Q. (By Mr. Fine) And so, Ms. Garrett, how long were your mom and dad together, how many years?

A. Let's see. I was born in '91, and they separated -- I was about 12 years old. So around about 12 years, maybe more.

Q. And like you said, I mean, they would kind of keep things behind closed doors, keep things from you from seeing certain things; is that fair to say?

5

A. Yeah, my parents -- like I say, my parents protect, like, they're still kind of like that. Something is wrong with my mom, she's not going to tell me; if something is wrong with my dad, he's not going to say anything. It's not to lie to me. I know it's because they want me to focus on what I'm doing, and I stress easy. They're parents, you know.

Q. Right. For instance, like, that would have been back when you were seven or eight years old, *that conviction for battery*. You didn't know about that till today, right?

A. Right, right. I probably wouldn't even have understood what it meant.

Q. Right. Because as a 7-year-old, you're not expected to understand things like your *parents beating up each other*, right?

A. Correct.

Q. Or being touched by someone inappropriately; is that fair to say?

A. No. That's one thing I would know if someone touched me inappropriately.

Q. I don't mean it like that. I mean, you know, a normal 7-year-old girl shouldn't have to experience *things like domestic violence* and sexual abuse; is that fair to say?

A. That's fair.

(emphasis added) (RR4: 125-29).

**B. State's Exhibit 2.**

State's Exhibit 2 consists of 11 pages:

<u>First page</u>.   The first page appears to be a summary of the proceedings in

Case No. 98-CR5451-5 and sets forth a plea of guilty to Count One only of a True

6

Bill alleging interference with government property and simple battery against a defendant named Robert Garrett. (State's Exhibit 2, p. 1).

Second and Third pages. The second and third pages of the exhibit is a two count Bill of Indictment; Count One alleges the offense of interference with government property against Robert Garrett; Count Two alleges the offense of simple battery against Robert Garrett. (State's Exhibit 2, pp. 2-3).

Fourth page. The fourth page is a document entitled "First Offender Information" signed by a defendant and his attorney. This document also contains a certificate signed by the presiding judge which states that a defendant named Robert Garrett pled guilty in open court to the charges in the Bill of Indictment and sets forth various declarations acknowledging the voluntariness of the defendant's plea. (State's Exhibit 2, pp. 4).

Fifth page. The fifth page contains admonishments to the defendant and his written responses in Case No. 98-CR5451-5. (State's Exhibit 2, p. 5).

Sixth and Seventh pages. The sixth page appears to be a judgment and sentence for Count One of the Indictment in Case No. 98-CR5451-5. The seventh page appears to be a mirror-image of the sixth page. (State's Exhibit 2, pp. 6-7).

Eighth and Ninth pages. The eighth page is an Order from the court that Count Two of Case No. 98-CR-5451-5 be "Nolle Prossed." The ninth page appears to be blank. (State's Exhibit 2, pp. 8-9).

7

Tenth and Eleventh pages. The tenth page is a Probation Revocation Order in Case No. 98-CR5451-5. The eleventh page is blank. (State's Exhibit 2, pp. 10-11).

### C. The prosecutor's closing argument.

So when you look at a two to 20 year offense and the offense is indecency with a 7-year-old girl, with your stepdaughter, you start at 20. And you then start factoring in things along the lines, well, what can we give the defendant credit for, **what do we hold as aggravating factors against him? And that's where you come up with your verdict.** That's where you're going to find the correct number.

. . . .

You have seen that from the testimony of Gabby, you've seen that from the testimony of Gisela about how this man basically just controlled her life. . . . This man is the one that beat her and this is the man **that beat Sharyl Williams, his first wife. You can go back and look at State's 2 and look at that, what he was placed on probation and revoked on that probation.**
**So he's a wife beater,** he's a child molester, he's controlling, he's manipulative. . . .

. . . Because what this guy does behind closed doors, you don't get any credit for that. What happens behind closed doors as y'all have found out today, this man, Robert Garrett is a different man behind closed doors and that's what manipulative, conniving evil human beings do. On the outside you look at them and they don't wear a sign that says **I'm a wife beater** and I'm a child molester. You only find that out when skeletons come out of the closet.

. . . .

And then the defense attorney gets up here and says show some mercy, let's have some mercy. . . . Mercy is something that's

8

earned. You can't just beg for mercy and expect to get it when you molest your step-daughter, ***when you beat the women you're supposed to love***, when you control them. You don't just get up here and say, oh please have mercy on me. You earn mercy. . . .

 (emphasis added) (RR4: 136-40).

***The court of appeals' conclusion that the jury would not have assessed a different sentence had State's Exhibit 2 been excluded is premised on false assumptions.***

In reaching the conclusion that the jury would not have assessed a different sentence had State's Exhibit 2 been excluded, the court of appeals stated:

> While the jury heard from the prosecutor that Garrett was a "wife beater" and had been convicted of assaulting his first wife, the jury also heard (I) the complainant's testimony that Garrett molested her at least four times, she was fearful of Garrett, and she knew Garrett had hit her mother and brother; (2) the complainant's mother's testimony that Garrett physically assaulted her several times during their four-year relationship; and (3) Garrett's daughter's testimony that the father she knew was not violent. Further, State's Exhibit 2 was admitted into evidence and available for the jury to review.

*Garrett*, 2015 Tex. App. LEXIS 8439 at *11-12. The court also discussed the closing arguments by both defense counsel and the prosecutor, noting that "[t]he jury followed neither defense counsel's plea for the minimum two-year sentence nor the prosecutor's implied plea for the maximum twenty-year sentence." *Id*. at *11.

Although the court of appeals is correct in its characterization of the testimony from the complainant and her mother, its reliance on the testimony from Appellant's daughter that the father she knew was not violent and the fact that

9

State's Exhibit 2 was admitted into evidence and available for the jury to review is clearly misguided. Any alleged mitigating effect from this evidence cannot be taken seriously by either this Court or the court of appeals. It was during the daughter's testimony that the State introduced Exhibit 2 into evidence and used the documents contained in the exhibit to create the false impression with the jury that Appellant had been previously convicted of assaulting his first wife in an attempt to impeach the daughter's credibility regarding her testimony that she knew her father to be a nonviolent person.

Furthermore, the court's implication that the jury could dispel any false impression regarding Appellant's previous criminal record because "State's Exhibit 2 was admitted into evidence and available for the jury to review" is simply ludicrous. Besides the fact that there is absolutely no evidence in the record that the jury asked that Exhibit 2 be given to them for review during their deliberations, even if they had asked for the exhibit and took the opportunity to review it, it is hard to imagine that any of the jurors would understand what an order stating that the charge of simple battery was "Nolle Prossed" would mean without an attorney explaining it to them. Indeed, Appellant's own trial attorney either did not examine the documents contained in the exhibit when it was tendered for admission, or if he did, clearly did not understand what the order meant.

The court of appeals also found it significant that the jury assessed a sentence somewhere in the middle of the range and did not assess the maximum punishment as requested by the State and cites to cases in which harm was found from the erroneous admission of evidence in which a sentence was assessed at either the maximum or close to the maximum. *Id*. at *11-12. The problem with this analysis is the fact that the jury in this case assessed a punishment somewhere in the mid-range falsely believing that Appellant did in fact have a prior conviction for assault. There is no doubt that the jury did in fact consider this conviction in assessing punishment. During deliberations the jury sent out a note asking if Appellant had served time for any other crimes. (CR: 101). The trial court's response was that "you have all the law and evidence you are to consider in this case." (CR: 101). The record shows that this was the only other crime the jury learned about.

### *Conclusion.*

Had the jury been aware of the fact that Appellant did not have a conviction for assaulting his first wife, the factual circumstances of his background would have appeared in a dramatically different light at the punishment hearing. The record makes it clear that the jury considered this false evidence during its deliberations in assessing punishment, thus, it cannot be said that the erroneous

11

admission of this evidence did not influence the punishment assessed. Because the court of appeals held otherwise, this Court should exercise its supervisory powers. TEX. R. APP. P. 66.3(f).

## **PRAYER FOR RELIEF**

For the reasons herein alleged, Appellant prays this Court grant this petition and, upon review, reverse the decision of the court of appeals.

Respectfully submitted,

*/s/ Kathleen A. Walsh*

Kathleen A. Walsh
Lynn Richardson                    Assistant Public Defender
Chief Public Defender          State Bar No. 20802200
Dallas County                       Dallas County Public Defender's Office
                                            Frank Crowley Courts Building
                                            133 N. Riverfront Blvd., LB-2
                                            Dallas, TX.  75207-4399
                                            (214) 653-3550 (telephone)
                                            (214) 653-3539 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2015, a true copy of the foregoing petition for discretionary review was served by electronic delivery to the Appellate Division[2] of the Dallas County Criminal District Attorney's Office at DCDAAppeals@dallascounty.org.; and was also served by electronic delivery to Lisa C. McMinn, State Prosecuting Attorney, at Lisa.McMinn@spa.texas.gov.

*/s/ Kathleen A. Walsh*
Kathleen A. Walsh

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count in this document, which is prepared in Microsoft Word 2010, is 3,168.

*/s/ Kathleen A. Walsh*
Kathleen A. Walsh

---

[2] G. Brian Garrison, the original State's attorney on appeal, is no longer employed by the Dallas County District Attorney's Office.

# APPENDIX



No *Shepard's* Signal™
As of: October 7, 2015 3:53 PM EDT

# *Garrett v. State*

Court of Appeals of Texas, Fifth District, Dallas

August 12, 2015, Opinion Filed

No. *05-13-00883-CR*

## Reporter

2015 Tex. App. LEXIS 8439

ROBERT GARRETT, Appellant v. THE STATE OF TEXAS, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On Appeal from the 265th Judicial District Court, Dallas County, Texas. Trial Court Cause No. F-1052395-R.

## Core Terms

issues, complainant's, simple battery, assault, extraneous, molested, sentence, admissible, violent, authenticated, convicted, hit

## Case Summary

### Overview

HOLDINGS: [1]-Where defendant was convicted of indecency with a child, the trial court did not abuse its discretion in allowing the complainant to testify under *Tex. R. Evid. 404(b)* that defendant had been violent towards her family because it showed why the complainant delayed in telling her mother that he had molested her; [2]-Defendant was not harmed by the erroneous admission of the State's exhibit at the punishment phase which mislead the jury as to defendant's criminal history; [3]-Given the nature of the testimony, the evidence supporting the verdict, and the nine-year punishment assessed, the appellate court could not find that the jury would have assessed a different sentence had the State's exhibit been excluded; [4]-Defense counsel's performance as to the State's exhibit did not prejudice defendant.

### Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Evidence > Admissibility > Character Evidence

Evidence > Admissibility > Conduct Evidence > Prior Acts, Crimes & Wrongs

*HN1* Because a defendant is entitled to be tried for the charged offense only and not his criminal propensities, evidence of extraneous acts or crimes committed by the defendant is generally inadmissible at the guilt-innocence stage of trial. *Tex. R. Evid. 404(b)(1)*. However, such evidence may be admissible for purposes other than character conformity. *Tex. R. Evid. 404(b)(2)*.

Evidence > Admissibility > Conduct Evidence > Prior Acts, Crimes & Wrongs

Criminal Law & Procedure > ... > Sexual Assault > Abuse of Children > General Overview

*HN2* Under *Tex. Code Crim. Proc. Ann. art. 38.37*, evidence of other crimes or acts committed by the defendant against the child who is the victim of the alleged offense is admissible to show, among other matters, the defendant's and child's state of mind and any prior or subsequent relationship between them. Under *Tex. R. Evid. 404(b)*, evidence of extraneous offenses or acts may be admissible to prove motive, identity, and the reason a sexual assault victim failed to report the assault promptly.

Evidence > Admissibility > Procedural Matters > Rulings on Evidence

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > Evidence

Criminal Law & Procedure > Appeals > Reversible Error > Evidence

*HN3* An appellate court reviews a trial court's decision to admit evidence for abuse of discretion and will uphold the decision so long as it falls within the zone of reasonable disagreement and is correct under any theory of law that finds support in the record. A decision that is erroneous will result in reversal of the trial court's judgment only if, upon a review of the entire record, the defendant was harmed, that is, only if the appellate court has grave doubt that the outcome was free from the substantial effect of the error.

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Constitutional Issues

Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process

Constitutional Law > State Constitutional Operation

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > General Overview

*HN4* A defendant forfeits a claim on appeal that the state due course of law clause provides more protection than the federal due process clause by failing to raise claim at trial.

Criminal Law & Procedure > ... > Standards of Review > Harmless & Invited Error > Evidence

Criminal Law & Procedure > ... > Standards of Review > Harmless & Invited Error > Prosecutorial Misconduct

Criminal Law & Procedure > Sentencing > Imposition of Sentence > Evidence

Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process

Criminal Law & Procedure > Appeals > Prosecutorial Misconduct > Use of False Testimony

*HN5* In the context of a due process violation stemming from the prosecutor's use of false or misleading evidence at the punishment phase of trial, harm is established upon proof beyond a reasonable doubt that the error complained of contributed to the verdict obtained.

Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Constitutional Issues

*HN6* A due process claim is not preserved for review on appeal unless it was raised at trial. *Tex. R. App. P. 33.1(a)*.

Criminal Law & Procedure > ... > Standards of Review > Harmless & Invited Error > Evidence

Criminal Law & Procedure > Sentencing > Imposition of Sentence > Evidence

*HN7* In the context of the erroneous admission of evidence at punishment, harm is established if the record as a whole reflects a reasonable probability that the evidence might have affected the punishment assessed.

Criminal Law & Procedure > ... > Standards of Review > Harmless & Invited Error > General Overview

Criminal Law & Procedure > Appeals > Reversible Error > General Overview

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Sentencing

*HN8* To obtain a reversal based on harm from counsel's deficient performance at punishment, an appellant must show that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the punishment hearing would have been different.

Criminal Law & Procedure > Appeals > Prosecutorial Misconduct > General Overview

*HN9* A prosecutor's action in misleading the jury as to the evidence is indefensible.

Criminal Law & Procedure > Criminal Offenses > Classification of Offenses > Felonies

Criminal Law & Procedure > Sentencing > Ranges

Criminal Law & Procedure > Sentencing > Fines

Criminal Law & Procedure > ... > Sexual Assault > Abuse of Children > Penalties

*HN10* Engaging in sexual contact with a child is a second degree felony punishable by imprisonment for any term of not more than twenty years or less than two years and an optional fine not to exceed $10,000. *Tex. Penal Code Ann. §§ 12.33*, *21.11(a)(1)*, *(d)* (2011).

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Sentencing

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Sentencing Issues

*HN11* In determining whether counsel's deficient performance prejudiced the appellant at punishment, the inquiry is whether there is a reasonable probability that the jury's assessment of punishment would have been less severe in the absence of defense counsel's deficient performance.

**Counsel:** For Appellants: Kathleen Walsh, Katherine Drew, Lynn Richardson, Dallas, TX.

For Appellees: G. Brian Garrison, Susan Hawk, Dallas, TX.

**Judges:** Before Justices Lang, Stoddart, and Schenck. Opinion by Justice Lang.

**Opinion by:** DOUGLAS S. LANG

# Opinion

## MEMORANDUM OPINION

Opinion by Justice Lang

A jury convicted Robert Garrett of indecency with a child and assessed punishment at nine years' confinement and a $4000 fine. Garrett raises six issues on appeal. His first five issues arise from what he claims is the erroneous admission, at the punishment stage of trial, of State's Exhibit 2, records concerning Garrett's 1998 arrest in DeKalb County, Georgia for "simple battery" and "interference with government property." In a sixth issue, Garrett complains of the admission, at the guilt-innocence stage of trial, of extraneous offense testimony that Garrett hit the complainant's mother and brother. We affirm the trial court's judgment.

## I. BACKGROUND

The complainant is the daughter of Garrett's ex-girlfriend. At the time Garrett and the complainant's mother began dating in 2006, the complainant was "like five [or] six" years old. About a year later, while the complainant and her family were living with Garrett, he molested the complainant. The complainant [*2] did not tell anyone, and Garrett molested her again. Garrett molested the complainant at least twice more before the complainant finally told her mother in early 2010.

At trial, the complainant testified she did not immediately disclose the abuse to her mother because she was scared of Garrett. Over objection by defense counsel, the complainant said Garrett had hit her mother in the face, breaking her glasses, and had hit her brother.

At punishment, complainant's mother corroborated complainant's testimony that Garrett was violent and testified that he hit her several times during their relationship. Garrett did not testify in his defense, but called his daughter from his first marriage, Prentice. Prentice testified the complainant's mother's testimony was "shocking" and inconsistent with the father she knew. Prentice testified Garrett worked hard and travelled often because of his

work. He and her mother were married twelve years, and she did not recall any violence between them.

On cross-examination, the prosecutor asked Prentice if she remembered Garrett being convicted of "simple battery" for physically assaulting her mother. Prentice testified she did not know of the conviction. [*3] Then, the prosecutor submitted to Prentice State's Exhibit 2. The prosecutor asked Prentice if her parents lived together in 1998 in DeKalb County, Georgia and if the documents in the exhibit had Garrett's and her mother's name on them and Garrett's date of birth. Based on her affirmative answers, the prosecutor asked Prentice if State's Exhibit 2 "appeared to be a conviction for your dad against your mom." Prentice replied, "I'm guessing so," at which point the prosecutor offered the exhibit into evidence. Defense counsel objected that the exhibit had not been "authenticated." The trial court overruled that objection, and the exhibit was admitted into evidence.

The prosecutor published the exhibit to the jury, representing to the jury that it was the record of a conviction for "simple battery" and probation. However, State's Exhibit 2 actually reflects that Garrett pled guilty to the "interference with government property" charge and the charge for "simple battery" was dismissed. Then, Garrett was placed on deferred adjudication probation. The true content of State's Exhibit 2 was not brought to the attention of the trial court or the jury. In closing argument, the prosecutor characterized [*4] Garrett as both a "child molester" and "wife beater," alluding to the "simple battery conviction" and testimony of Garrett's violent behavior towards the complainant's mother.

## II. EXTRANEOUS OFFENSE TESTIMONY

We address first Garrett's sixth issue which complains of the admission, at the guilt-innocence stage, of the complainant's testimony that Garrett was violent. The record reflects that, in response to defense counsel's objection to the complainant explaining why she was scared of Garrett, the prosecutor stated the testimony was admissible under *article 38.37 of the Texas Code of Criminal Procedure* because it "went to her state of mind and the relationship that she had with [Garrett]." *See TEX. CODE CRIM. PROC. ANN. art. 38.37* (West Supp. 2014). Garrett asserts *article 38.37* applies only to extraneous acts committed by the defendant against the complainant and, because the extraneous acts of assault to which the complainant testified were against her family members, the testimony was not admissible under *article 38.37*. Garrett further asserts the testimony was inadmissible under *Texas Rule of Evidence 404(b)* which generally prohibits the admission of extraneous offense evidence. *See TEX. R. EVID. 404(b)*.

*A. Applicable Law and Standard of Review*

**HN1** Because a defendant is entitled to be tried for the charged offense [*5] only and not his criminal propensities, evidence of extraneous acts or crimes committed by the defendant is generally inadmissible at the guilt-innocence stage of trial. *See Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); see also Tex. R. Evid. 404(b)(1); Devoe v. State, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011)*. However, such evidence may be admissible for purposes other than character conformity. *Moses, 105 S.W.3d at 626; see also Tex. R. Evid. 404(b)(2)*. For example, **HN2** under *article 38.37 of the Texas Code of Criminal Procedure,* evidence of other crimes or acts committed by the defendant against the child who is the victim of the alleged offense is admissible to show, among other matters, the defendant's and child's state of mind and any prior or subsequent relationship between them. *Tex. Code Crim. Proc. Ann. art. 38.37*. Further, under *Texas Rule of Evidence 404(b)(2)*, evidence of extraneous offenses or acts may be admissible to prove motive, identity, and the reason a sexual assault victim failed to report the assault promptly. *See Tex. R. Evid. 404(b); Brown v. State, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983); Wilson v. State, 90 S.W.3d 391, 394 (Tex. App.—Dallas 2002, no pet.)*.

**HN3** An appellate court reviews a trial court's decision to admit evidence for abuse of discretion and will uphold the decision so long as it falls within the zone of reasonable disagreement and is correct under any theory of law that finds support in the record. *Devoe, 354 S.W.3d at 469*. A decision that is erroneous will result in reversal of the trial court's judgment only if, upon a [*6] review of the entire record, the defendant was harmed, that is, only if the appellate court has "grave doubt" that the outcome "was free from the substantial effect of the error." *See Barshaw v. State, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011); Alexander v. State, 740 S.W.2d 749, 765 (Tex. Crim. App. 1987)*.

*B. Application of Law to Facts*

Applying the appropriate standard, we conclude no abuse of discretion occurred in allowing the complainant to testify Garrett had been violent towards her mother and brother. Although Garrett is correct that *article 38.37*, upon which the State relied at trial, does not allow the testimony, the testimony was admissible under *rule of evidence 404(b)*. *See Tex. R. Evid. 404(b); Devoe, 354 S.W.3d at 469*. The testimony was offered not to show character conformity, but to show why the complainant delayed in telling her mother that Garrett had molested her. *See Brown, 657 S.W.2d at 119; Wilson, 90 S.W.3d at 394*. The trial court's ruling will be upheld since it is correct under the law despite being different than the specific objection of the State. *See Devoe, 354 S.W.3d at 469*. We decide Garrett's sixth issue against him.

## III. STATE'S EXHIBIT 2

Now, we address issues one through five, which raise as error the admission of State's Exhibit 2 in the punishment phase. In his first issue, Garrett argues the prosecutor's misrepresentation of the content of the exhibit violated his right to due process. [*7] [1] His second and third issues assert his trial counsel's representation was inadequate as counsel failed to object to the prosecutor's misrepresentation of the content of the exhibit, examine the exhibit when offered as evidence, and investigate Garrett's criminal history. In his fourth and fifth issues, Garrett argues the exhibit should have been excluded because it was not "authenticated" or "linked" to him. The focus of Garrett's argument in these issues is on harm; that is, the jury would have assessed a different punishment had the prosecutor not misrepresented the record, trial counsel rendered effective assistance by properly objecting, and the exhibit been excluded.

*A. Applicable Law*

1. Due Process

**HN5** In the context of a due process violation stemming from the prosecutor's use of false or misleading evidence at the punishment phase of trial, harm is established upon "pro[of] beyond a reasonable doubt that the error complained of . . . contribute[d] to the verdict obtained." *See Ex parte Ghahremani, 332 S.W.3d 470, 477-78 (Tex. Crim. App.*

---

[1] Garrett also argues the prosecutor's conduct violated his right to due course of law under the Texas Constitution. However, he fails to argue the Texas due course of law provision provides greater protection than the federal *due process clause*, and the case upon which he relies, *Ex parte Ghahremani, 332 S.W.3d 470 (Tex. Crim. App. 2011)*, involved a due process claim only. *See Ghahremani, 332 S.W.3d at 477; see also Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)* (**HN4** defendant forfeited claim on appeal that state due course of law clause provided more protection than federal *due process clause* by failing to raise claim at trial); *Manns v. State, 122 S.W.3d 171, 192 n.97 (Tex. Crim. App. 2003)* (analyzing claim that appellant improperly impeached with [*8] illegally obtained recorded statement solely under *Fourth Amendment* jurisprudence; although appellant relied upon Texas Constitution at trial, on appeal he did not cite to that provision or explain how its protections differ from the *Fourth Amendment*).

*2011)*. **HN6** A due process claim, like many others however, is not preserved for review on appeal unless it was raised at trial. *See* Tex. R. App. P. *33.1(a)*; *Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1985)*.

## 2. Authentication and Link of Records

**HN7** In the context of the erroneous admission of evidence at punishment, harm is established if the record as a whole reflects a reasonable probability that the evidence might have affected the punishment assessed. *See Alexander, 740 S.W.2d at 765*.

## 3. Ineffective Assistance of Counsel

**HN8** To obtain a reversal based on harm from counsel's deficient performance at punishment, an appellant must show that "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the punishment hearing would have been different." [*9] *See Andrews v. State, 159 S.W.3d 98, 101, 103 (Tex. Crim. App. 2005)*.

## B. Application of Law to Facts

As to Garrett's due process claim raised in his first issue, we conclude it was not preserved for our review as his sole objection to State's Exhibit 2 at trial was that the documents were not "authenticated." *See Broxton, 909 S.W.2d at 918*. Accordingly, we decide his first issue against him.

Issues four and five address the alleged erroneous admission of State's Exhibit 2 because it was not properly authenticated. As stated above, State Exhibit 2 reflected Garrett was charged with "simple battery" and "interference with government property," but the "simple battery" charge was dismissed when Garrett pleaded guilty to the "interference with government property" charge. However, the record is clear that the jury was misled as to the content of the exhibit and what it stated as to Garrett's criminal history. Garrett's daughter was led to testify that the exhibit "appeared to reflect" Garrett was convicted of assaulting her mother. Then, when admitted as evidence, the prosecutor published the exhibit to the jury saying:

> This is a conviction, case 98-CR-5451-5 out of DeKalb County, Georgia Superior Court for simple battery. It states: On the 26th day of May 1998, the defendant, [*10] Robert Garrett, did intentionally make physical contact with an assaultive provoking nature of the person Sharyl Williams. There's also a probation revocation order filed on May 14, 2002 in the same cause number.

Finally, in urging in closing argument a lengthy sentence, the prosecutor characterized Garrett as both a "child molester" and "wife beater," referring to the exhibit and the testimony of the complainant and her mother that Garrett had been violent towards the mother.

In its brief on appeal, the State refers to the prosecution's statements that Garrett was convicted of "simple battery" as a "mischaracterization." No explanation for the prosecutor's action is attempted. **HN9** Misleading the jury as to the evidence is indefensible. *See Ex parte Davis, 957 S.W.2d 9, 13 (Tex. Crim. App. 1997)* (characterizing as "reprehensible" prosecutor's actions in misleading the jury as to why certain evidence was not tested and the quality of the investigation conducted by the police). While we cannot condone what the State refers to as "mischaracterization" and find such action reprehensible, in determining harm, we must review the *entire* record and not only the action of the State as to the exhibit.

Garrett was charged with **HN10** engaging in sexual contact [*11] with the complainant, a second degree felony punishable by imprisonment for any term of not more than twenty years or less than two years and an optional fine not to exceed $10,000. *See* Tex. Penal Code Ann. §§ *12.33*, *21.11(a)(1)*, *(d)* (West 2011). In closing argument, defense counsel asked the jury to "show some mercy" to Garrett, consider his steady employment and "his whole life," and assess the minimum sentence. The prosecutor, characterizing "child molestation" as the "worst" of the second-degree felonies, asked the jury to start at the top of the punishment range and "then start factoring in things . . . we [can] give [Garrett] credit for . . . [and things] we [can] hold as aggravating factors against him." The jury followed neither defense counsel's plea for the minimum two-year sentence nor the prosecutor's implied plea for the maximum twenty-year sentence. Instead, it assessed a nine year sentence and $4000 fine.

While the jury heard from the prosecutor that Garrett was a "wife beater" and had been convicted of assaulting his first wife, the jury also heard (1) the complainant's testimony that Garrett molested her at least four times, she was fearful of Garrett, and she knew Garrett had hit her mother [*12] and brother; (2) the complainant's mother's testimony that Garrett physically assaulted her several times during their four-year relationship; and (3) Garrett's daughter's testimony that the father she knew was not violent. Further, State's Exhibit 2 was admitted into evidence and available for the jury to review.

Given the nature of the testimony before the jury, including the evidence supporting the verdict, and the punishment

assessed, we cannot conclude the jury would have assessed a different sentence had State's Exhibit 2 been excluded. Cf., e.g., *Chapman v. State, 150 S.W.3d 809, 818-19 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd)* (in aggravated sexual assault case, admission of outcry testimony of extraneous offense was harmful where punishment ranged from five years to ninety-nine years or life and jury assessed eighty-eight year sentence); *Aleman v. State, 49 S.W.3d 92, 96 (Tex. App.—Beaumont 2001, no pet.)* (in display of harmful material to minor case, admission of three driving while intoxicated judgments was harmful where prosecutor relied on them to urge maximum sentence and jury assessed maximum punishment of one year confinement in jail and $4000 fine). We decide Garrett's fourth and fifth issues against him.

As to issues two and three, respecting Garrett's ineffective assistance of counsel claim, because the issues [*13] arise from the admission into evidence of State's Exhibit 2 and we have concluded Garrett was not harmed by the admission of the exhibit, we necessarily conclude defense counsel's performance as to the exhibit did not prejudice Garrett. *See Lair v. State, 265 S.W.3d 580, 595 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)* (*HN11* in determining whether counsel's deficient performance prejudiced appellant at punishment, inquiry is "whether there is a reasonable probability that the jury's assessment of punishment . . . would have been less severe in the absence of defense counsel's deficient performance."). Accordingly, his second and third issues are also decided against him.

## IV. CONCLUSION

Having decided Garrett's six issues against him, we affirm the trial court's judgment.

/Douglas S. Lang/

DOUGLAS S. LANG

JUSTICE

Do Not Publish

*Tex. R. App. P. 47*

## JUDGMENT

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered this 12th day of August, 2015.